UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| Edward Stewart, | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| Experian Information Solutions, Inc., | : | CASE NO. 2:23-cv-00242-JPH-MG |
| Defendant. | : | |

# AMENDED COMPLAINT

1. After an Indiana court entered a judgment establishing that Mr. Stewart had no legal obligation to a collection company named Absolute Resolutions Investments, LLC ("ARS" or "Absolute," a junk debt buyer) and after Mr. Stewart made multiple disputes to Experian concerning the accuracy of the Absolute tradeline in Mr. Stewart's file, Experian maintained the inaccurate tradeline information and sold a credit report to a third party containing the inaccurate credit information.

2. Mr. Stewart brought this suit under the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## Absolute Sued and The Court Entered Judgment for Mr. Stewart

3. ARS sued Mr. Stewart in Vigo County, Cause No. 84D04-1909-CC-007031, a collection case seeking to collect on a consumer credit card account.

4. ARS sued Mr. Stewart on a debt that it claimed to have purchased from US Bank.

5. On 02/05/2021, the Vigo County Court, in Cause No. 84D04-1909-CC-007031, entered judgment in favor of Mr. Stewart and against ARS on all claims.

6. Had Mr. Stewart owed any money to ARS for the alleged debt, the judgment in his favor disposed of it as a matter of law. After 02/05/21, Mr. Stewart indisputably had no legal obligation to ARS concerning the credit tradeline at issue.

7. Following that suit, Experian continued credit reporting the ARS tradeline even though Mr. Stewart obtained judgment in his favor against ARS.

1

## Credit Reporting System Overview:
## What is a furnisher? What is an ACDV form? What is e-Oscar?

8. A 'furnisher' is any person/company which furnishes data to a consumer reporting agency (CRA). Furnisher includes debt collectors who credit report.

9. An Automated Credit Dispute Verification (ACDV) form is an electronic document used by the consumer credit reporting industry as part of their automated dispute resolution system.

10. This system is called e-OSCAR (Electronic Online Solutions for Complete and Accurate Reporting). This online system, called e-OSCAR, primarily supports Automated Credit Dispute Verification (ACDV) and Automated Universal Data form (AUD) processing.

11. A portion of the ACDV form, including the data in a consumer's file for that tradeline, is generated by the CRA. The ACDV is then sent through e-OSCAR to the data furnisher (DF) based on the CRA and subscriber code affiliations.

12. The furnisher then responds in its own section by making no change (stays same) or updating. The ACDV is returned to the initiating CRA with updated information (if any) relating to the consumer's credit history.

13. Certain industry information can be found online at the following web address: https://www.e-oscar.org/getting-started/about-us.

14. Credit reporting is an entirely voluntary process.

15. Experian is not required to report any collection tradeline provided by any data furnisher. But if Experian elects to avail itself to the benefits of credit reporting, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

# Mr. Stewart's Disputes

## *The February 2021 Dispute*

16. Mr. Stewart disputed the ARS credit information in his credit file to Experian.

17. Mr. Stewart's dispute letter dated February 7, 2021, attached the Vigo County judgment.

18. Experian received Mr. Stewart's dispute correspondence with his letter dated February 7, 2021. [Ex. 1, 2/7/21 Experian dispute, STEWART_EXP_000009-14].

19. Experian generated an ACDV corresponding to Mr. Stewart's February 2021 dispute. [Ex. 2, 3/12/21 ACDV to Experian, STEWART_EXP_000002].

20. Experian processed an ACDV on 02/26/21 (EXP_002) in response to Mr. Stewart's 02/07/21 dispute letter (EXP 009-014).

21. Following Experian's processing of Mr. Stewart's dispute, Experian not only continued to report that Mr. Stewart owed ARS, Experian inserted increased data into its system indicating that the balance and amount past due increased. [See below, Ex. 2, p.1].

| RESPONSE: | 23 - Change-Disp info accurate-Updated acct info unrelated to dispute | | | | |
|---|---|---|---|---|---|
| TRADE INFORMATION | SUBSCRIBER RESPONSE | | ON PROFILE | | |
| Acct Condition/Cumm Status: | | | / COLL ACCT | | |
| Act Status/Rating: | 93 | | | | |
| Payment Rating: | | | | | |
| CII: ECOA: | 1 | | 1 | | |
| Balance: Balance Date: | 2,679 | 03/12/2021 | 2,484 | 02/18/2021 | |
| Amt Past Due: | 2,679 | | 2,484 | | |
| Orig Delinq Date: | 11/15/2017 | | | | |
| Credit Limit/Orig Amt: | | | | | |
| High Credit Balance: | 2,484 | | 2,484 | | |
| Charge Off Amt: | | | | | |
| Sch Monthly Pay: Act Pay: | | | | | |
| Portfolio Name: | | | | | |
| Date Last Pay: | Remove | | | | |
| Open Date: Closed Date: | 05/25/2018 | Remove | 05/25/2018 | | |
| Spec Comm Code: | | | | | |
| Cons Compl Code: | XC | | XH | | |
| Type: Terms: Freq: | 0C | | 0C | 001 | |
| Original Creditor: | US BANK NATIONAL ASSOCIATION | | U.S. BANK NATIONAL ASSOCIATION | | |

*The September 2021 Dispute*

22. In September of 2021, Mr. Stewart disputed again to Experian. [Ex. 3, 09/12/21 Dispute to Experian, STEWART_EXP_000015-147].

23. Mr. Stewart's dispute letter explains that the balance claimed to be owed inexplicably increased, that the reporting inaccurately indicates his dispute was resolved [Ex. 3 at 1], and should be deleted [Ex. 3 at 1-2].

24. Mr. Stewart also provides instructions, providing relevant portions of the Credit Reporting Resource Guide promulgated by the Consumer Data Industry Association (CDIA) [Ex. 3 at 17-53], and specifics on how Experian was to handle the reporting in this situation:



[Ex. 3 at 31-31].

25. Experian processed another ACDV on 09/22/21 (Ex. 4, STEWART_EXP_000001) in response to Mr. Stewart's 09/12/21 dispute (EXP 000015-147).

26. But Experian maintained the ARS tradeline. [Ex. 4, 9/24/21 ACDV to Experian].

*The November 2021 Dispute*

27. In November of 2021, Mr. Stewart disputed to Experian again. [Ex. 5, Stewart 11/22/21 Dispute, STEWART_EXP_148-295].

28. Mr. Stewart explains that the reporting was inaccurate by representing "Account Paid in Full" and that it should have been deleted. [Ex. 5 at 1].

29. Mr. Stewart specifically identified how the account should have been handled by providing the relevant portions of the CDIA manual, explaining Experian was required to "**discontinue reporting the account**" and that Experian report a "Special Comment Code = DE (Debt Extinguished Under State Law)." [Ex. 5 at p.2 & 45-46].

30. Experian processed another ACDV on 12/04/20 (EXP_004) in response to Mr. Stewart's 11/22/21 dispute (EXP 148-295).

31. At no time before Mr. Stewart filed suit against Experian did Experian make a determination that any of Mr. Stewart's disputes were frivolous or irrelevant.

**Experian's Reckless Disregard for Consumer Rights**

32. With the possible exception of identity theft disputes, Experian does not conduct any investigation or reinvestigation into consumer's disputes. Instead, when receiving disputes by mail, Experian (or some person or entity acting on its behalf) simply sends notice of the dispute to the furnisher of the disputed tradeline along with 1-2 dispute codes and sometimes a dispute reason. Any data provided by the furnisher in response to the ACDV (sent by the CRA and then responded to by the furnisher) is placed in the consumer's file.

33. Correct or not, Experian relied solely on the data furnisher in determining whether to maintain disputed information in Mr. Stewart's credit file.

5

34. Experian's policy is to rely solely on data furnishers and not to do any investigation (or 'reinvestigation') into tradeline disputes concerning inaccurate balances.

35. Experian claims to accept proof documents, which are documents Experian claims it will accept from a consumer as proof of their dispute. But such proof documents are limited to documents created by the furnisher. This means there is nothing a consumer can do to get Experian to fix inaccurate credit information provided by one of Experian's data furnishers unless the data furnisher allows it or a consumer sues Experian.

36. Experian employs people with the title "Senior Litigation Analyst." These people work with Experian's counsel and assist with consumer litigation. Part of their job is to testify as a corporate representative for Experian.

37. Part of the training of a Senior Litigation Analyst for Experian includes how to respond to questions at depositions.

## **Experian Specifics**

38. When Experian receives a dispute regarding a trade item on a consumer's credit file, Experian's policy is to convey that dispute via the ACDV to the data furnisher, and Experian expects that the data furnisher respond to the dispute with the furnisher's data on the ACDV.

39. An ACDV is a two-part document; half of it is completed by the CRA, Experian, and half of it is completed by the recipient, the furnisher.

40. Experian completes part of the ACDV, sends it to the recipient furnisher, and the furnisher completes the ACDV and sends it back.

41. Experian's policy, for it least the last 2 years, has been that every page of the dispute correspondence is always attached to the ACDV, with no exceptions.

42. Part of Experian's business is selling credit reports to companies that want to see credit history on consumers.

43. Experian keeps credit files on a very large portion of the adults in the United States.

44. Experian gets the information that it sells from data furnishers.

45. A data furnisher is a company which provides information to Experian.

46. Data furnishers can consist of mortgage servicers, retail merchants, and debt collectors.

47. Not everybody on the street can be a data furnisher.

48. Companies have to be qualified before they can be a data furnisher.

49. In order to be a data furnisher, a company has to agree to certain things with Experian before Experian will accept the company.

50. The agreement, between a data furnisher and Experian which is required for a company to be a data furnisher to Experian, is a completely voluntary arrangement.

51. There is no legal requirement that anybody be a data furnisher. Being a data furnisher is completely voluntary.

52. The relationship between Experian and a data furnisher is a business relationship.

53. Part of the relationship between Experian and its data furnishers is that data furnishers give their data to Experian so that Experian can issue credit reports using that data. That authorization is all part of the subscriber agreement with those data furnishers.

54. In order to become a data furnisher, companies also have to go through vetting to make sure they are doing their jobs correctly.

55. The data furnishers have to know the format in which their data needs to be reported, which is called Metro 2.

56. Metro 2 is an industry-standard format for data that's exchanged between credit reporting agencies, like Experian, and data furnishers.

57. These data furnisher obligations (in the 3 preceding paragraphs) are all part of what data furnishers agree to with Experian in order to be a data furnisher. These obligations are in the subscriber agreement.

58. Experian regularly receives consumer credit data from Absolute, at least once per month.

59. Experian understands that Absolute's business is debt collection.

60. Accounts that are placed with debt collectors are accounts that are designated as having a derogatory status.

61. Any accounts reported by a debt collector are deemed to be in derogatory status.

62. The accounts reported by Absolute are deemed to be derogatory status.

63. Any data Experian received from Absolute was deemed derogatory.

64. Experian is aware that Absolute's primary book of business is dealing with defaulted debt.

65. Experian maintains transaction logs for transactions concerning Mr. Stewart's credit file.

66. Experian maintains dispute results concerning the results of consumer disputes with Experian.

67. When an item is reported into Experian's database and it gets assigned to a consumer's account like Mr. Stewart, that data stays in the consumer's file until Experian either removes it or is told to remove it by the furnisher.

68. Experian uses the data in consumer files to generate credit reports that it sells to third parties.

69. Experian uses the data in consumer files to generate credit scores that are sold to third parties.

70. Experian uses the data in consumer files to generate information for what Experian calls account reviews, including inquiries.

71. At the time a consumer report concerning a consumer is sold, data in the consumer's file is used to generate the products that Experian sells, including credit reports, account reviews and credit scores.

72. The credit report inquiry log states the dates that there was an inquiry and the type of inquiry.

73. When a 'hard inquiry' exists in a consumers file, such inquiry means that a consumer report was generated.

74. Experian charges a different amount of money for various reports, including a complete copy of the report, an account review, a credit score, or a bullseye report.

75. Experian makes money selling consumer reports.

76. Experian keeps track of the type of furnisher that it providing the data.

77. Experian knows the difference between a finance company and a debt collector and a debt buyer.

78. Experian receives data from Absolute Resolutions Investments I, LLC, which is a data furnisher.

79. Experian puts the data it receives from data furnishers in the appropriate consumer's file.

80. Experian keeps copies of the monthly reporting that it receives from furnishers.

81. Experian keeps copies of furnisher's monthly reporting in a document Experian calls the Long Admin.

82. The Metro 2 data provided to Experian by a furnisher is not the same exact data or document as the Long Admin.

## **Experian's Failed Legal Obligations**

83. The FCRA requires a consumer to notify a consumer reporting agency directly, or indirectly through a reseller, of a consumer's dispute of the completeness or accuracy or any item of information contained in the consumer's file at a consumer reporting agency in order to trigger that CRA's obligations under 15 U.S.C. § 1681i. This dispute notice triggers the consumer reporting agency's obligation to conduct a reasonable 'reinvestigation' to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file. If an item of information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

84. If any information that has been deleted from a consumer's file pursuant to 15 U.S.C. § 1681i(a)(5)(A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any means available to the agency.

85. Pursuant to 15 U.S.C. § 1681i(a)(5)(C), a consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to 15 U.S.C. § 1681i(a)(5)(C) (other than information that is reinserted in accordance with 15 U.S.C. § 1681i(a)(5)(B)(i).

86. Pursuant to 15 U.S.C. § 1681i(a)(5)(D),

87. Any consumer reporting agency that compiles and maintains files on consumers on a nationwide basis shall implement an automated system through which furnishers of information to that consumer reporting agency may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file to other such consumer reporting agencies.

88. Pursuant to 15 U.S.C. § 1681i(a)(6)(A), a consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

89. Pursuant to 15 U.S.C. § 1681i(a)(7), a consumer reporting agency shall provide to a consumer a description referred to 15 U.S.C. § 1681i(a)(6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

90. A consumer reporting agency shall provide to a consumer a description referred to in paragraph 15 U.S.C. § 1681i(a)(6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

91. Pursuant to 15 U.S.C. § 1681e(b), whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates.

92. On information and belief, Experian violated each one of the FCRA provisions cited. This allegation is made based on the fact that Experian sent an notice to Mr. Stewart indicating the disputed credit item was verified and continued to be shown in Mr. Stewart's file following his disputes and Experian's notice of claiming it was verified.

93. After taking the depositions of the people who reviewed and processed Mr. Stewart's disputes to Experian, Mr. Stewart experts to show all of the foregoing.

94. Experian is a corporation which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

95. Experian is a consumer reporting agency as defined by the Fair Credit Reporting Act. 15 U.S.C. 1681a(f).

## **Short and Plain Statement**

96. Experian did no investigation into Edward Stewart's disputes of an inaccurate item ("Absolute Resolutions Investment I") contained in Experian's file on Stewart.

97. Stewart was stressed as a result of Experian's inaction and lack of procedures to assure accurate reporting.

Stewart seeks all available damages pursuant to law, including punitive and actual damages, fees and costs.

## JURY DEMAND

Mr. Stewart demands a jury trial.

Respectfully submitted,
/s/ *Duran L. Keller*
Duran L. Keller (31743-79)
**KELLER LAW**
8 North Third Street, Suite 403
Lafayette, Indiana 47901
Telephone: (765) 444-9202
Facsimile: (765) 807-3388
Email: duran@kellerlawllp.com
*Attorney for Edward Stewart*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served upon all parties via CM/ECF.

| | |
|---|---|
| Date: San Francisco, California<br>July 11, 2023 | /s/ Duran L. Keller<br>Duran L. Keller |